NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NELSON BAUTISTA**,

        Plaintiff(s),

v.

**CHECKR, INC.,** *et al.*,

        Defendant(s).

Civil Action No. 23-3796 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

This matter comes before the Court upon Defendant Checkr, Inc.'s ("Checkr" or "Defendant") Motion to Dismiss (ECF No. 6) and Plaintiff Nelson Bautista's ("Plaintiff") Motion for Pro Bono Counsel (ECF No. 7). In support of its Motion to Dismiss, Checkr filed a Moving Brief. ("Moving Br.", ECF No. 6-2.) Plaintiff opposed the motion. ("Opp'n", ECF Nos. 8, 12.) Checkr replied. ("Reply", ECF No. 9.) Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1, for the reasons set forth below and for good cause appearing, the Court will **GRANT** Checkr's Motion to Dismiss. The Court additionally will **DENY** Plaintiff's Motion for Pro Bono Counsel. (ECF No. 7.)[1]

---

[1] In the Third Circuit, upon a Motion for Pro Bono Counsel, a court considers the framework established in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993). Under the *Tabron* framework, the Court must first assess "whether the claimant's case has some arguable merit in fact and law." *Montgomery v. Pinchack*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Tabron*, 6 F.3d at 155). Here, with respect to the first *Tabron* prong, the Court has established that Plaintiff's case has no arguable merit in fact and law. Therefore, the Court need not consider the additional *Tabron* factors. Accordingly, Plaintiff's motion to appoint pro bono counsel (ECF No. 7) will be **DENIED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was employed by Uber, Inc. ("Uber") as a driver for six (6) years. (*See* "Compl.", Ex. A to ECF No. 1-1 at 7.[2]) On or about June 2023, Plaintiff alleges that Uber ran a background check on him using background screening company Checkr. (*See id.*; Opp'n, ECF No. 8 at 1.) Plaintiff further alleges that Checkr "lied" about his Motor Vehicle Record ("MVR") by reporting that he had been involved in three (3) accidents, and that Checkr failed to do any further investigation into the accuracy of the information it supplied to Uber. (*See* Compl.) Plaintiff does not dispute his involvement in the accidents. However, he asserts they were "not [his] fault" and that the accidents were on his own time and not while he was driving with Uber. (*Id.*) He alleges that his New Jersey Department of Motor Vehicles ("DMV") records say that he is in "good standing," and that he has "no points." (*Id.*; ECF No. 8-4.) After learning of the background check results, Uber allegedly "[took Plaintiff] off the platform," "instead of investigating," leaving him "out of a job." (Compl. at 7.) On June 5, 2023, Plaintiff filed the instant action against Uber and Checkr in the Superior Court of New Jersey, Law Division, Special Civil Part, Somerset County, demanding $20,000 or alternatively, reinstatement on the Uber platform. (*See id.*).

On July 14, 2023, Checkr removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446. (*See* ECF No. 1; "Mot.," ECF No. 6-2 at 1.) As the basis for its removal, Checkr argues that while the Complaint does not specifically cite the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, it appears to essentially plead a claim for a violation of that statute, specifically § 1681e(b).

---

[2] In deciding a Rule 12(b)(6) motion, a court may consider exhibits attached to the complaint if the complainant's claims are based upon the provided documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## II. JURISDICTION

To the extent the Complaint alleges a claim under federal law, this Court has original jurisdiction under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler,* 578 F.3d at 211 (quoting *Iqbal,* 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## IV.   DISCUSSION

### A.   RELEVANT PROVISIONS OF THE FCRA

Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Under the FCRA, "consumer reporting agencies" ("CRAs")[3] must "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b).

To accomplish its stated aim, the FCRA regulates the contents of "consumer reports" and imposes other requirements on CRAs. *Id.* § 1681a. A consumer report under the FCRA is broadly defined. It includes any communication of any information "bearing on a consumer's credit worthiness . . . , character, general reputation, personal characteristics, or mode of living which is used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or . . . employment purposes." *Id.* § 1681a(d).

---

[3] "The term 'consumer reporting agency' means any person [including a corporation or other entity] which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. §§ 1681a(f).

The FCRA governs "the obligations of an entity that, like Checkr, furnishes a 'consumer report' to anyone who intends to use it for, *inter alia*, employment purposes." *Reese v. Uber Techs., Inc.*, Civ. No. 18-3300, 2020 WL 13689685, at *1 n.1 (E.D. Pa. Mar. 25, 2020) (citing 15 U.S.C. § 1681b(a)(3)(B)). Notably, *Reese* explicitly addressed a plaintiff's claims against Uber and Checkr pertaining to information in the plaintiff's criminal background checks. However, the Federal Trade Commission (FTC), the agency responsible for enforcing the FCRA, has suggested that the FCRA also applies to non-criminal background checks including MVR checks. In a 1998 Advisory Opinion, the FTC stated that "[d]riving record checks . . . are covered by the FCRA when they are provided to an employer by a [CRA] because they involve the [consumer's] 'character, general reputation, personal characteristics, or mode of living' . . . and thus meet the definitional requirement of a 'consumer report.'" Fed. Trade Comm'n, Advisory Op. to Basting Re: Section 603(o) of the Fair Credit Reporting Act (06-11-98), https://www.ftc.gov/legal-library/browse/advisory-opinions/advisory-opinion-basting-06-11-98. Courts in this district have held that Checkr is a consumer reporting agency. *See, e.g.*, *Reese*, 2020 WL 13689685, at *1 n.1; *Harmon v. RapidCourt, LLC*, Civ. No. 17-5688, 2018 WL 6062355, at *1 (E.D. Pa. Nov. 20, 2018). Checkr is the CRA that furnished a consumer report to Plaintiff's employer, Uber. Therefore, Checkr's background report containing Plaintiff's MVR check is subject to the FCRA.

FCRA § 1681e(b) requires that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To state a claim under this provision, a plaintiff must allege that "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate

entry." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010)); *see also Berkery v. Equifax Info. Servs. LLC*, Civ. No. 18-3417, 2019 WL 1958567, at *3 (E.D. Pa. May 2, 2019). An FCRA violation may be willful (meaning the CRA acted "knowingly or with reckless disregard of the statute's terms") or negligent. *See* 15 U.S.C. §§ 1681n, 1681o; *Bibbs*, 43 F.4th at 342 n.16. However, a plaintiff must allege all four elements to state a proper FCRA claim. *See Bibbs*, 43 F.4th at 342.

If a consumer disputes information retained by a CRA and notifies the agency, the CRA must "conduct a reasonable reinvestigation." 15 U.S.C. § 1681i(a)(1)(A). "A [CRA] is liable for failing to reinvestigate under § 1681i if it 'had a duty to do so, and . . . would have discovered a discrepancy had it undertaken a reasonable investigation.'" *Berkery*, 2019 WL 1958567, at *3 (quoting *Cortez*, 617 F.3d at 713).

### B.     PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER THE FCRA

The Complaint is handwritten. Its substance consists of the following, single paragraph:

> I am suing both companies because I've been working for Uber for the past 6 years and Checkr background lied that my drivin [sic] record is not good when I went to get my DMV records and it says in good standing – no point [sic] no points clean. 3 accidents shows on my report but I was not doing Uber and I was not at fault. So Uber decided to take me off the platform. So now I'm going to be out of a job instead of investigating [sic] well sorry not fair.

(Compl. at 7.)

Based on this Complaint, the Court agrees that Plaintiff's claim falls within the FCRA. However, for the reasons set forth below, the Court finds that Plaintiff has not asserted a plausible claim for relief.

In his Complaint and his opposition to the motion, Plaintiff concedes the information Checkr reported—that he was involved in "3 accidents"—is correct. (Compl.; Opp'n, ECF No. 8

at 1). Notably, beyond a bald assertion that Checkr "lied," his Complaint does not allege that there was any factual inaccuracy in Checkr's report. Nor does he allege that Checkr included in its report information prohibited by the FCRA, such as information about outdated arrests or criminal charges that did not result in convictions.[4] *See, e.g.*, *Reese*, 2020 WL 13689685, at *1 n.1; *Harmon*, 2018 WL 6062355, at *1. The fact that Plaintiff's motor vehicle record says he is in "good standing" and has "no points" is not inconsistent with Checkr reporting accurate information. (*Id.*; ECF No. 8-4.) Checkr's accurate reporting negates the first element of a § 1681e(b) claim. Therefore, the Court need not consider the other three elements of such a claim, as a plaintiff must satisfy all elements to state a claim for relief. *See, e.g.*, *Reese*, 2020 WL 13689685, at *1 n.1 (granting Checkr's motion to dismiss for failure to state a claim where the plaintiff did not allege that the criminal conviction information Checkr provided to Uber was false); *see also Chijioke-Uche v. Equifax Info Servs.*, Civ. No. 19-4006, 2021 WL 2005499, at *3, *9 (E.D. Pa. May 20, 2021) (granting the defendant CRAs' motion for summary judgment because the plaintiff failed to allege factual inaccuracy in his credit reports). Likewise, the Court need not reach the question of intent—whether Checkr acted willfully or negligently.[5]

To the extent that the Complaint might be read to claim that the information Checkr provided to Uber about Plaintiff, although correct on its face, is *misleading* because it does not assign fault in the accidents, Plaintiff still has not asserted a claim for relief. The Third Circuit

---

[4] Generally, with some exceptions, consumer reports may not contain arrest records that predate the report by more than seven years or "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(2), (5), (b).

[5] The Court notes that Defendant raises a preemption argument that turns on an interpretation of Plaintiff's assertions regarding Checkr's intent. Defendant argues that "[t]o the extent Plaintiff attempts to allege a negligence claim against Checkr, Section 1681h(e) of the FCRA expressly preempts it." (Mot. at 6.) (alteration in original). Giving the Complaint its most expansive reading, it is not clear whether Plaintiff's bald assertion that Checkr "lied" is meant to allege that Checkr acted in a willful manner or whether he is merely alleging negligence on Checkr's part. However, as discussed above, the Court need not address this question because Plaintiff has not stated the elements of an FCRA claim.

7

Court of Appeals has not yet opined on the issue of whether "inaccuracy" in the FCRA context also includes instances in which a CRA reports misleading information. However, at least one district court in this circuit has stated that inaccuracy constitutes not only information that is technically incorrect, but also information that is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shannon v. Equifax Info. Servs.*, 764 F. Supp. 2d 714, 722 (E.D. Pa. 2011); *see also Cortez*, 617 F.3d at 709 (noting that the distinction between "accuracy" and "maximum possible accuracy" is "in fact quite dramatic" and citing favorably a Fifth Circuit case that described as "woefully misleading" a CRA report that stated a consumer was "involved" in a credit card scam without clarifying that the consumer was a victim of the scam). Nevertheless, CRAs are only required to take "*reasonable*" measures to ensure "maximum possible accuracy" in their reports. 15 U.S.C. § 1681e(b) (emphasis added). They are not required to ensure maximum completeness of those reports. "Reasonable procedures are those that a reasonably prudent person would undertake under the circumstances." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996) (internal quotations and citations omitted). "Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy."[6] *Id.* Here, Plaintiff's supporting documents suggest that Checkr simply reported the information that the New Jersey DMV included on Plaintiff's MVR. (*See* ECF Nos. 8-3 at 2, 8-4.) Requiring the further step of gathering information from Plaintiff's insurance company and New Jersey police reports to ensure comprehensiveness of Plaintiff's background report is over and above technical accuracy and would impose a burden on Checkr that would be beyond the actions a reasonably

---

[6] "[T]he reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Cortez*, 617 F.3d at 709 (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)).

prudent CRA would take under the circumstances. The Court finds that Checkr's reporting procedures to ensure maximum possible accuracy were reasonable in this instance.[7]

Plaintiff also claims that Uber, like Checkr, should have investigated his driving record further before removing him from its platform.[8] (Compl. at 7.) However, the relief Plaintiff seeks from this Court as to Uber is likewise outside the scope of what FCRA § 1681e(b) can provide.

In sum, even construing Plaintiff's allegations liberally, it is readily apparent for the reasons set forth above that Plaintiff not only has not stated a claim under the FCRA, but he cannot state one. Accordingly, the Court will dismiss his FCRA claim with prejudice.

## V.     CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant Checkr's Motion to Dismiss (ECF No. 6.) The Complaint will be dismissed with prejudice. The Court will additionally **DENY** Plaintiff's Motion for Pro Bono Counsel. (ECF No. 7.) An appropriate Order will follow.

Date: February 26, 2024

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[7] As Checkr notes, Plaintiff's "collateral attack on the underlying record" is not sufficient to hold a CRA liable under the FCRA. (Reply, ECF No. 9 at 2); *see also Scalercio-Isenberg v. TransUnion, LLC*, Civ. No. 20-11222, 2022 WL 2666947, at *3 (D.N.J. July 11, 2022) (holding the plaintiff's assertion that debts reported as delinquent were a result of the creditor stealing her payments was "not the type of dispute that [CRAs are] required to resolve (or can resolve) through a reinvestigation"); *Nnebe v. Bank of Am.*, Civ. No. 08-05045, 2010 WL 11668060, at *3 (D.N.J. Feb. 17, 2010) (holding that "Experian and Trans Union as credit reporting agencies were under no duty outside their regular investigatory procedures to research the accuracy and completeness of the information received"); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 69 (1st Cir. 2008) ("A credit reporting agency has no duty, as a part of its reinvestigation, to go behind public records to check for accuracy or completeness when a consumer is essentially collaterally attacking the underlying credit information.").

[8] The Court notes that Plaintiff's best recourse may be to clarify his driving record with Uber with additional information. The Court also recognizes the potential difficulty Plaintiff could face in attempting to contact Uber since he presents evidence that he tried unsuccessfully to contact Uber's CEO after he was removed from the platform. (ECF No. 8-1 at 1.)

9